**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| IN RE: | : | Misc. No.: | 08-0442 (TFH) |
| | : | | |
| GUANTANAMO BAY | : | Civil Action Nos: | 05-1509 (RMU) |
| DETAINEE LITIGATION. | : | | 05-1602 (RMU) |
| | : | | 05-1704 (RMU) |
| | : | | 08-1310 (RMU) |

**MEMORANDUM OPINION**

**DENYING THE PETITIONERS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND DENYING THE PETITIONERS' MOTION FOR A PRELIMINARY INJUNCTION**

**I. INTRODUCTION**

Six of the thirteen petitioners in the above captioned cases – all Uighur[1] detainees at the United States Naval Station, Guantanamo Bay, Cuba ("Guantanamo") – request that the court issue a temporary restraining order ("TRO") or a preliminary injunction requiring the respondents to transfer them to less restrictive locations within Guantanamo. On one side of this controversy are the claims of the petitioners who have been detained without a trial now for nearly seven years; and on the other side is the position of their detainer, the United States government, supported in large part by the ambiguity created by the Supreme Court's latest effort to provide guidance on the rights of the Guantanamo detainees. *Boumediene v. Bush*, 128 S. Ct. 2229 (2008). What is clear is that no court has ever ruled that detainees, designated as enemy combatants, have a right to challenge the conditions of their confinement pursuant to the constitutional writ of habeas corpus. Furthermore, courts are reluctant to second-guess day-to-day operations of domestic prison facilities, especially when doing so intrudes upon the military and national security affairs. This deference combined with the paucity of evidence of

---

[1] Uighurs are members of a Turkic Muslim minority group from a western province in the People's Republic of China who speak their own dialect. Pet'rs' Mot. at 1-2.

irreparable injury and the petitioners' failure to articulate a specific constitutional right and standard from which to analyze the facts of this case presses the court to deny the petitioners' motion for a TRO and a preliminary injunction.

## II.  FACTUAL & PROCEDURAL BACKGROUND

In total, there are seventeen Uighur detainees at Guantanamo – who despite being designated as enemy combatants[2] have nevertheless been cleared for transfer out of the facility. Resp'ts' Opp'n at 2.  The six petitioners bringing this motion are in their seventh year of detention at Guantanamo.  Pet'rs' Mot. at 1.  Guantanamo is divided into multiple camps – Camp 6 is a high security area and Camp 4 is a minimum security area.  Resp'ts' Opp'n, Ex. 1 ("Vargo Decl.") ¶¶ 4-7.  Although it is unclear how long the petitioners have been in Camp 6, they have been there for at least several months.  *Id.* at 17 n.9.

In Camp 6, the petitioners are held in six-foot-eight-inch by twelve-foot cells.  Pet'rs' Mot. at 2.  The walls, ceiling and floor are metal and remain cool to the touch, due to air conditioning that the detainees cannot control.  *Id.* 2-3.  The cells have long, narrow windows providing a view of an interior corridor and clock, but there is no window to the outside.  *Id.* at 3. Although the petitioners do not have access to television, radio, magazines or newspapers, they have access to a limited number of books, including the Koran, printed in their language.  *Id.* at 3 & Ex. 1 ("Willett Decl.") ¶ 18.  And though the petitioners can communicate with one another between the cells, as they do for group prayer, they contend that it is difficult to hear over the noise of the air conditioning and banging doors.  *Id.*  Guards allow the petitioners out of their

---

[2]  The government "has now determined that it will treat Parhat [one of the seventeen Uighurs] as if he were no longer an enemy combatant and house him accordingly while it uses its best efforts to place him in a foreign country."  Resp'ts' Pet. for Reh'g at 1-2, *Parhat v. Gates*, No. 06-1397 (D.C. Cir. Aug. 4, 2008).

cells for up to four hours a day. *Id.* at 3. During this "recreation" time, guards usher the petitioners to a different holding facility, measuring approximately three meters by four meters. *Id.* The time of day for recreation varies; some days it is in the afternoon and others it is in the middle of the night. *Id.* at 4. The petitioners insist that these conditions are causing marked mental deterioration, resulting in attempted suicides, hallucinations and depression. *Id.*

Camp 4, on the other hand, allows the detainees to live and eat communally. *Id.* at 2 n.3. A bunk house provides shelter, and picnic tables provide a place to congregate during meals. *Id.* The detainees also have 24-hour access to a small outdoor recreation area and can freely interact with one another. *Id.*

On July 31, 2008, the Court Security Officer received the petitioners' motion for a TRO and preliminary injunction requesting the court to order the respondents to transfer them from Camp 6 to Camp 4. The court ordered expedited briefing and now turns to the petitioners' requests.

### III.  ANALYSIS

#### A.  Legal Standard for Injunctive Relief

This court may issue a preliminary injunction only when the movant demonstrates:

> (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 64 (D.D.C. 2000). The district court must balance the strengths of the moving party's arguments on each of the four factors. *CityFed Fin. Corp.*, 58 F.3d at 747.

"These factors interrelate on a sliding scale and must be balanced against each other."[3] *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 360-61 (D.C. Cir. 1999) (citing *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998)); *see also WMATA v. Holiday Tours, Inc.*, 559 F.2d 841, 842-43 (D.C. Cir. 1977) (the court "examines each requirement in light of the others to determine whether an injunction would be proper").

In addition, a particularly strong showing on one factor may compensate for a weak showing on one or more of the other factors. *Serono Labs., Inc.*, 158 F.3d at 1318. "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.*, 58 F.3d at 747. If the plaintiff makes a particularly weak showing on one factor, however, the other factors may not be enough to compensate. *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1507 (D.C. Cir. 1995), *amended on other grounds on reh'g*, 66 F.3d 1226 (D.C. Cir. 1995).

It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (*per curiam*). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

Moreover, the other salient factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction.

---

[3]    Furthermore, a party who seeks a mandatory injunction to change (rather than preserve) the status quo "must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *Veitch v. Danzig*, 135 F. Supp. 2d 32, 35 (D.D.C. 2001).

4

*CityFed Fin. Corp.*, 58 F.3d at 747 (quotation omitted). Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *Id.*

Finally, because preliminary injunctions are extraordinary forms of judicial relief, courts should grant them sparingly. *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. *Ambach v. Bell*, 686 F.2d 974, 979 (D.C. Cir. 1982). In addition, any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown. *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990) (citation omitted).

### B. The Court Denies the Petitioners' Motion for a TRO/Preliminary Injunction

#### 1. The Petitioners Have Not Demonstrated a Substantial Likelihood of Success on the Merits

As a threshold issue, the respondents contend that the court lacks jurisdiction over the petitioners' challenges to their conditions of confinement. Resp'ts' Opp'n at 4-14. The petitioners do not substantively address this issue, but rather simply assert that those jurisdictional questions are irrelevant because requiring the government to transfer the petitioners from Camp 6 to Camp 4 is akin to "conditional release," which the court has inherent authority to order. Pet'rs' Reply at 1-2. Characterizing the issue in this way, however, without applicable authority to back it up, leaves the court in the unfortunate position of evaluating the respondents' jurisdictional arguments without the benefit of counterargument. The Supreme Court has held that jurisdiction is one gauge by which the court can measure the likelihood of success on the

5

merits.  *Munaf v. Geren*, 128 S. Ct. 2207, 2219 (2008) (noting that difficult jurisdictional issues make "success more *unlikely* due to potential impediments to even reaching the merits").  Accordingly, the court proceeds to account for the serious pause prompted by the jurisdictional concerns in the case.

28 U.S.C. § 2241(e)(1) purports to strip the court of jurisdiction "to hear or consider an application for a writ of habeas corpus filed by or on behalf of an alien detained by the United States . . . as an enemy combatant," and § 2241(e)(2) removes the court's jurisdiction "to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, or conditions of confinement of an alien who is or was detained by the United States . . . as an enemy combatant."  While it can be argued that the Supreme Court, in *Boumediene*, invalidated both (e)(1) and (e)(2), 128 S. Ct. at 2240 (2008) (concluding that "§ 2241(e) (Supp. 2007)[] operates as an unconstitutional suspension of the writ"), the court recognizes that it must "refrain from invalidating more of the statue than is necessary [w]henever an act of congress contains unobjectionable provisions separable from those found to be unconstitutional."  *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987) (internal alterations and quotations omitted).  In deciding *Boumediene*, the Court limited its analysis to whether detainees could challenge the legality of their detention through constitutional habeas, *Boumediene*, 128 S. Ct. at 2240, 2262 (noting that "other questions regarding the *legality* of the detention are to be resolved in the first instance by the District Court" and that "[p]etitioners . . . are entitled to the privilege of habeas corpus to challenge the *legality* of their detention") (emphasis added), and explicitly stated that it was not determining "the reach of the writ with respect to claims of unlawful conditions of treatment or confinement," *id.* at 2274.  And therefore, this court interprets *Boumediene* to invalidate only 28 U.S.C. § 2241(e)(1).

6

Assuming a colorable argument that the constitutional writ of habeas corpus has "expanded along with post-1789 developments" to include challenges to the petitioners' conditions of confinement, *id.* at 2248 (which, if true, would render 28 U.S.C. 2241(e)(2) an unconstitutional suspension of the writ) the court notes that the petitioners neglect to make this assertion in their briefs. *See generally* Pet'rs' Mot. Consequently, the threshold issue of jurisdiction as it relates to substantial likelihood loses vitality.

Moreover, even if the court has jurisdiction to remedy the petitioners' grievances, the merits of the claims themselves fall short of establishing a likelihood of success. The petitioners first invoke the court's inherent powers to fashion equitable relief. Pet'rs' Mot. at 6-7. But appealing to abstract notions of judicial authority cannot on its own arm the court with authority to issue the extraordinary relief of an injunction in this case. *See O.K. v. Bush*, 344 F. Supp. 2d 44, 62 (D.D.C. 2004) (rejecting a "free-floating responsibility to ensure the general welfare of petitioner pursuant to the powers under the All Writs' Act and its inherent judicial and habeas authority" as it relates to Guantanamo detainees designated as enemy combatants).

The petitioners next resolutely declare that "the *Parhat* finding of innocence is dispositive in these cases." Pet'rs' Reply at 10. The recent D.C. Circuit decision in *Parhat v. Gates* established that the Combatant Status Review Tribunal's designation of Parhat (a Uighur detainee) as an enemy combatant was based on insufficient evidence. 2008 WL 2576977 (D.C. Cir. June 20, 2008). Whatever positive inferences may be drawn from *Parhat* in evaluating the likelihood of success of the detainees' habeas petitions, they are fatally undermined by the petitioners' failure to qualify their conditions of confinement as violating their constitutional rights. *See Wetzel v. Edwards*, 635 F.2d 283 (4th Cir. 1980) (denying a prisoner's motion for a preliminary injunction for, *inter alia*, failing to demonstrate that the conditions of his

7

confinement violated his constitutional rights). Indeed, the court's scrutiny of the likelihood of success examines in contrast the constitutional standard for relief,[4] on the one hand, with the deference given to prison officials to maintain day-to-day operations[5] on the other hand. The deference given to "the Executive in military and national security affairs" also factors into the analysis. *Dep't of the Navy v. Egan*, 484 U.S. 518, 530 (1988). In this regard, the petitioners have clearly failed to make a showing which adequately supports the relief requested. For these reasons, the court concludes that the petitioners fall short of demonstrating a substantial likelihood of success on the merits of their claims.

### 2. The Petitioners Have Not Sufficiently Demonstrated Irreparable Injury in Light of the Weak Showing of Success on the Merits

Moving to irreparable injury, the petitioners contend that their mental health is deteriorating due to "touchless torture." Pet'rs' Mot. at 4. Each day they idle in six-foot-eight-inch by twelve-foot cells, released into a recreation pen for only two to four hours of the day or night. *Id.* at 2-3; Pet'rs' Reply at 5. The recreation area is three by four meters – more than one detainee may occupy the "recreation yard." Pet'rs' Mot. at 3-4; Vargo Decl. ¶ 13. The respondents counter that the petitioners can hasten their return to Camp 4 by correcting the behavioral issues that originally caused them to be moved to Camp 6. Resp'ts' Opp'n at 16. And, the respondents insist that "the petitioners are confined in conditions that do not even approach 'isolation.'" *Id.* Specifically, the respondents highlight that the petitioners "have

---

[4] *Compare Turner v. Safley*, 482 U.S. 78, 89 (1987) (requiring that prison regulations be "reasonably related to legitimate penological interests") *with Farmer v. Brennan*, 511 U.S. 825, 846 (1994) (applying the Eighth Amendment's deliberate indifference standard) *and Block v. Rutherford*, 468 U.S. 576, 583 (1984) (noting that for pretrial detainees, "the dispositive inquiry is whether the challenged condition, practice, or policy constitutes punishment").

[5] *Turner v. Safley*, 482 U.S. at 85 (counseling courts to exercise judicial restraint in resolving the "complex and intractable" problems of prisons).

communication with and recreation privileges with other detainees, as well as library access and the ability to participate in uninterrupted group prayer." *Id.* at 2.

Keeping in mind the sliding scale on which the court weighs the preliminary injunction factors against each other, *Davenport*, 166 F.3d at 360-61, the court concludes that the petitioners' irreparable injury claim lacks sufficient heft to counterbalance the minimal showing of likelihood of success on the merits.[6] *See Al-Ghizzawi v. Bush*, 2006 WL 2844781, at *4 (D.D.C. Oct. 2, 2006) (denying the petitioner's motion for a preliminary injunction because "he has not demonstrated a substantial likelihood of success on the merits or that he will suffer irreparable harm absent the requested relief"). Accordingly, the court denies the petitioners' motion for a TRO and a preliminary injunction.

### IV.  CONCLUSION

For the foregoing reasons, the court denies the petitioners' motion for a TRO and a preliminary injunction. An order consistent with this Memorandum Opinion is issued separately and contemporaneously this 7th day of August, 2008.

                                                                RICARDO M. URBINA
                                                                United States District Judge

---

[6] Additionally, the remaining two factors do not lean in the petitioners' favor. First, it remains unclear what threat the petitioners pose if transferred to a less secure facility. Two of the six petitioners have a history of infractions, including "assaults on the guard force," Vargo Decl. ¶ 9, and consistent with deference accorded prison administration in managing security within the facility, the court will not order relief that could endanger the lives of these guards or other detainees. Second, the public interest in maintaining a secure facility at Guantanamo is on par with the public interest in ensuring that the guards their observe the law and that the detainees are not mistreated. Thus, this factor remains in equipoise.

9